**Dennis MORGAN and Louise Morgan, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 853, Docket 91–6227.**

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1992.

Decided June 25, 1992.

Charles S. Kleinberg, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., on the brief), for defendant-appellee.

Evan Sarzin, New York City (Queller & Fisher, on the brief), for plaintiffs-appellants.

_____

\* Honorable Thurgood Marshall, Associate Justice Retired of the United States Supreme Court,

Before: NEWMAN and KEARSE, Circuit Judges, and MARSHALL, Associate Justice Retired.\*

KEARSE, Circuit Judge:

Plaintiffs Dennis and Louise Morgan appeal from an order of the United States District Court for the Eastern District of New York, Reena Raggi, *Judge,* limiting plaintiffs' recovery in this action under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 (1988), for injuries suffered as a result of medical malpractice at a veterans administration hospital. The district court, vacating a judgment in the amount of $106,000 entered by United States Magistrate Judge A. Simon Chrein, ruled that under 38 U.S.C. § 351 (1988) plaintiffs' recovery must be reduced by the amounts administratively awarded them by the government pursuant to that section. On appeal, plaintiffs contend that the district court erred in concluding that § 351 required a setoff against their entire FTCA recovery rather than solely against the portion of that recovery that compensated them for lost earnings. We disagree and affirm the order of the district court.

## I. BACKGROUND

The following facts do not appear to be in dispute. In April 1981, plaintiff Dennis Morgan ("Morgan"), a veteran, was a patient at the Veterans Administration ("VA") Hospital in Northport, New York (the "Hospital"). After an x-ray discovered a mediastinal mass in his chest area, the Hospital staff failed to perform a C.A.T. scan on him, resulting in a several-month delay in diagnosing him as suffering from Hodgkin's disease. During the delay, the tumor quadrupled in size. Because the immediately ensuing treatment did not sufficiently reduce the size of the tumor, Morgan was required to undergo eight months of treatment by chemotherapy, during which he suffered debilitating side-effects.

Section 351 of 38 U.S.C. (renumbered § 1151 by Department of Veterans Affairs

sitting by designation.

Codification Act, Pub.L. No. 102–83, § 5(a) (1991) ("1991 DVA Act"), but referred to herein as "§ 351") provides that the government will make benefits payments ("§ 351 payments") to veterans who are injured, or whose injuries are aggravated, through the fault of VA hospital staff. As a result of his treatment at the Hospital, the VA determined that Morgan was entitled to receive § 351 payments for the period from April 20, 1981, onward. By mid–1988 Morgan was receiving some $1,240 per month in § 351 payments.

Plaintiffs commenced the present action in 1984 under the FTCA. Following a bench trial before the magistrate judge pursuant to the Federal Magistrates Act of 1979 ("Magistrates Act" or "Act"), 28 U.S.C. § 636 (1988), the magistrate judge found that, as a result of the delay in diagnosis, Morgan had suffered damages in the total amount of $212,564, comprising $24,000 for eight months' sterility and loss of libido during chemotherapy, $16,000 for loss of enjoyment of life during the same period, $160,000 for eight months of pain and suffering caused by the chemotherapy, and $12,564 for lost earnings. Plaintiff Louise Morgan, Morgan's wife, was found to have been injured in the amount of $12,-000 for loss of consortium during Morgan's eight months of chemotherapy. The magistrate judge found, however, that Morgan was equally at fault with the Hospital for the delay in the discovery of the precise nature of his illness and accordingly reduced each of the above amounts by 50%, reaching a total of $112,282 in damages, including $6,282 for lost earnings.

The magistrate judge observed that § 351 requires a setoff against § 351 payments of amounts recovered as a result of VA malpractice claims filed under the FTCA. By the time of the trial, Morgan had received a total of approximately $91,-000 in § 351 payments. The magistrate judge concluded, however, that the setoff applied to only so much of the FTCA recovery as represented lost earnings, not to recoveries for such injuries as pain and suffering or loss of enjoyment of life, *see, e.g., Jackson v. United States*, 526 F.Supp. 1149, 1152 (E.D.Ark.1981), *aff'd mem.,* 696

F.2d 999 (8th Cir.1982); *Christopher v. United States,* 237 F.Supp. 787, 799 (E.D.Pa.1965), and he accordingly reduced the total amount awarded to Morgan by only $6,282. Denying a posttrial motion by the government to have the entire FTCA damages award set off against the § 351 payments to Morgan, the magistrate judge adhered to his original view, stating as follows:

> [U]pon a review of § 351 and the statutory scheme of title 38 as set forth above by plaintiff, I conclude that pain and suffering damages are not the "equivalent" of those payments provided pursuant to the statute. I find this to be equally true for those damages awarded for loss of enjoyment of life and for sexual dysfunction. I choose instead to follow those cases which do not permit a setoff under § 351 against damages for pain and suffering.

Memorandum and Order dated May 8, 1989, at 7–8. Accordingly, the magistrate judge entered judgment in favor of plaintiffs in the amount of $106,000.

Pursuant to 28 U.S.C. § 636(c)(4), the government appealed to the district court. In a Memorandum and Order dated June 30, 1991 ("District Court Order"), the district court vacated the judgment "[t]o the extent the magistrate limited the set-off to that portion of the award reflecting only lost earnings." *Id.* at 19. Noting that the language of § 351 was ambiguous, the court stated that it was "persuaded from the legislative history and the contemporaneous views of the sponsoring agency that the amendment to § 351 requiring a set-off of benefits against tort damages was intended to apply to the total amount of the judgment and not to any subset thereof." District Court Order at 12.

The district court remanded to the magistrate judge to permit recalculation of the damage award with a setoff of the statutory benefits against the total amount of the FTCA damages award. Plaintiffs petitioned pursuant to 28 U.S.C. § 636(c)(5) for leave to appeal to this Court, which was granted. For the reasons below, we affirm the ruling of the district court.

## II.  DISCUSSION

On appeal, plaintiffs argue principally that the setoff provision of § 351 was intended only to avoid a double recovery for lost income, not to effect recoupment of § 351 benefits against other elements of damages.  For the reasons below, we disagree and affirm the order of the district court.  We begin, however, with a discussion of our jurisdiction to entertain an appeal at this juncture.

### A.  *Appellate Jurisdiction*

In the present case, the judgment entered by the magistrate judge was appealed by the government to the district court pursuant to 28 U.S.C. § 636(c)(4).  The district court vacated that judgment and remanded to the magistrate judge for recalculation of damages and entry of a new judgment.  So far as the record indicates, that recalculation has not occurred, and no new judgment has been entered.  Plaintiffs petitioned this Court for leave to appeal the district court's decision, and a prior panel granted the petition without discussing the question of jurisdiction.  Since a federal court always has the power to examine the question of its own subject matter jurisdiction, *see Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908), and since the present question seems likely to recur, we explore here the basis of our jurisdiction to review an order that is not final in the traditional sense.

As a general matter, the federal courts of appeals have jurisdiction to review decisions of the district courts only on appeals from final judgments pursuant to 28 U.S.C. § 1291 (1988), or appeals from certain interlocutory orders pursuant to 28 U.S.C. § 1292 (1988), or, in rare instances, by extraordinary writ, *see* Fed.R.App.P. 21.  There is a strong federal policy against piecemeal appeals, *see, e.g., Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956), and the "traditional rule [is] that an appeal statute is read to require a final judgment absent express permission for appeal from interlocutory orders," 15A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3901.1, at 46 (1992).  Thus, when the decision of the district court does not pertain to an injunction, a receivership, or a case in admiralty, *see* 28 U.S.C. § 1292(a), and is not an interlocutory order as to which the district court has granted certification and we have granted leave to appeal, *see id.* § 1292(b), we normally lack jurisdiction to hear the appeal unless the decision is embodied in a final order.  A final judgment or order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order.  *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

The Magistrates Act, which allows the parties to a civil suit to agree that the case will be tried before a magistrate judge, provides two routes for appeals to the court of appeals.  First, absent agreement by the parties, "[u]pon entry of judgment" in such a case "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court."  28 U.S.C. § 636(c)(3).  Second, if the parties agree, the aggrieved party may appeal instead "to a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals," *id.* § 636(c)(4); and in this event, the Act provides for discretionary review by the court of appeals:

> Cases in the district courts under [§ 636(c)(4) ] may be reviewed by the appropriate United States court of appeals upon petition for leave to appeal by a party stating specific objections to the judgment.

*Id.* § 636(c)(5).

The Act contains no explicit statement as to whether the court of appeals may grant leave to appeal with respect to the district court's interlocutory orders as well as final judgments, and indeed, it is

not entirely clear to what "the judgment" in § 636(c)(5) refers. The judgment referred to earlier in § 636(c) is one entered by a magistrate judge. *See* § 636(c)(3). But it seems unlikely that that is "the judgment" referred to in § 636(c)(5), for since § 636(c)(5) requires the party seeking to appeal to state his or her "objections to the judgment," such an interpretation would preclude a discretionary appeal if the district court had vacated or reversed the judgment entered by the magistrate judge. In that event, the petitioning party would not be the party that objects to the judgment (which would no longer be in force), but rather the party that seeks its reinstatement. We doubt that Congress intended to foreclose discretionary review in cases in which the district court reversed or modified the judgment entered by the magistrate judge, for cases involving unsettled questions of law on which the district court and the magistrate judge have differed present especially worthy candidates for review by the courts of appeals. *See, e.g., Moore McCormack Lines, Inc. v. International Terminal Operating Co.,* 784 F.2d 1542, 1545 (2d Cir.1986).

In the Federal Rules of Civil Procedure, "judgment" is defined to "include[ ] a decree and any order from which an appeal lies," Fed.R.Civ.P. 54(a)—a definition that is not especially helpful in determining appealability. Two courts discussing what types of issue warrant exercise of the power of discretionary review under the Act have intimated that the judgment as to which review is sought under § 636(c)(5) must be final. *See Penland v. Warren County Jail,* 759 F.2d 524, 530 (6th Cir. 1985) (en banc) (petition for leave to appeal must contain "copies of the *final* judgments of the district court and the magistrate") (emphasis added); *Wolff v. Wolff,* 768 F.2d 642, 648 (5th Cir.1985) (same). In neither case was there any discussion of the need for finality, since in both cases the petitions had sought leave to appeal from judgments that were in fact final.

We are not convinced that a finality requirement was intended. The language of § 636(c)(5) itself is not compelling evidence of such an intent, for the somewhat casual reference to "the judgment" at the end of § 636(c)(5) would be an unusually oblique way of imposing a requirement of finality in light of the fact that the section begins by stating that *"[c]ases* in the district courts ... may be reviewed ...." 28 U.S.C. § 636(c)(5) (emphasis added). Nor does the legislative history of the Act discuss the precise question of whether or not Congress intended to give the courts of appeals the power of discretionary review with respect to a district court order that is not final. *See, e.g.,* 15A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3901.1, at 45 ("The statute does not say anything specific about interlocutory appeals, any more than it says anything specific about a requirement of finality. The committee reports are equally silent.").

In any event, we need not decide in the present case whether or not § 636(c)(5) was intended to permit review of interlocutory orders, for even if the section were intended to permit discretionary review only of district court orders that are final, we would conclude, by analogy to our decisions in cases not involving magistrate judges, that the order at issue here was sufficiently final. In a small class of cases in which a decision of the district court concludes the litigation except for the need to make a ministerial or arithmetic computation of damages, we have considered the judgment sufficiently final to give us jurisdiction under § 1291. *See, e.g., Synergy Gas Co. v. Sasso,* 853 F.2d 59, 62 (2d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988); *accord Parks v. Pavkovic,* 753 F.2d 1397, 1401–02 (7th Cir.) (citing cases), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985). The rationale is that when what remains to be done is merely routine, that routine decision will not spark an appeal; hence permitting the earlier review will not thwart the policy against piecemeal appeals. We see no reason not to apply this principle to a case in which the district court's order is nonfinal only because it remands to the magistrate judge to make an arithmetic correction to the judgment. Since in the

present case the order of the district court left essentially only an arithmetic task to be performed, we conclude that even if a final order were required, the present order was sufficiently final.

## B. *The Merits*

██ Section 351 provides, in pertinent part, as follows:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment ... under any of the laws administered by the Secretary [of Veterans Affairs], ... and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to ... such veteran, disability ... compensation under this chapter ... shall be awarded in the same manner as if such disability [or] aggravation ... were service-connected. Where an individual is, on or after December 1, 1962, awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 or, on or after December 1, 1962, enters into a settlement or compromise under section 2672 or 2677 of title 28 by reason of a disability [or] aggravation ... treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such judgment, settlement, or compromise on account of such disability [or] aggravation ... becomes final until the aggregate amount of benefits which would be paid but for this sentence equals *the total amount included in such judgment, settlement, or compromise.*

38 U.S.C. § 351 (emphasis added). The substantive question presented by this appeal is whether the phrase "total amount included in such judgment" was intended, as the government argues, to encompass the total amount of any FTCA award to a veteran for injuries resulting from VA medical treatment or was intended instead, as plaintiffs argue, to refer only to that portion of such an FTCA award which represents the veteran's lost earnings. We conclude that "total amount" means the total, not merely the lost earnings component.

Plaintiffs' argument centers on § 351's use of the term "disability," in the phrases "judgment ... by reason of a disability" and "disability ... compensation under this chapter [chapter 11 of 38 U.S.C.]." The term "disability" is not defined in chapter 11, which is entitled "Compensation for Service–Connected Disability or Death." An administrative regulation states that "[t]otal disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 3.340(a)(1) (1991). Invoking this regulation, plaintiffs argue that since "total disability" means a total inability to earn, any lesser disability must be deemed to refer to a partial inability to earn; and hence any award under § 351 of compensation for his VA hospital-induced "disability" must be deemed to compensate him only for his lost earnings. We disagree.

First, § 3.340(a)(1) defines "total disability" in order to identify veterans who are entitled, under various statutory or regulatory sections, to special benefits for that condition. Section 351 is not one of the sections that grants such special benefits. It is also plain from other statutory provisions that benefits for partial disability are not based solely on a veteran's loss of earning ability. For example, 38 U.S.C. § 314 (renumbered § 1114 by 1991 DVA Act but referred to herein as "§ 314"), which sets rates of wartime disability compensation for specified percentage levels of disability, reveals that many disability ratings are keyed to specific anatomical losses, *see, e.g., id.* § 314(k) (loss of, *e.g.,* one foot), which may or may not result in a diminution of earning ability. And subsection (s) of § 314 makes plain that the concept of service-connected disability is not linked solely to earning ability, or indeed to any single factor, for that subsection states that a veteran may "ha[ve] a service-connected *disability rated as total, and ...* ha[ve] *additional* service-connected disabil-

ity or disabilities." *Id.* § 314(s) (emphasis added).

Thus, though the VA benefit system gears monthly monetary awards to a schedule of percentage ratings of disability, and the percentage ratings are described as "represent[ing] as far as can practicably be determined the average impairment in *earning* capacity resulting from ... injuries," 38 C.F.R. § 4.1 (1991) (emphasis added), "[t]he basis of disability evaluations is the ability of the body *as a whole* ... to function under the ordinary conditions of daily life *including* employment...." 38 C.F.R. § 4.10 (1991) (emphasis added). In describing the workings of this system, therefore, a Senate report accompanying the Veterans' Benefits Improvement Act of 1984 stated that the disability ratings are *"assigned"* to individual veterans "on the basis of the nature and extent of the disability or combination of disabilities, *without regard to whether the particular veteran is or is not actually engaged in gainful occupation or the level of his or her earnings,"* S.Rep. No. 98–604, 98th Cong., 2d Sess. 31 (1984), *reprinted in* USCCAN 4479, 4495 (emphasis added).

Accordingly, we reject plaintiffs' reliance on the regulatory scheme for the proposition that "disability" payments under § 351 compensate only for lost earnings. On its face, § 351's requirement that the statutory payments be offset against "the total amount included in [the FTCA] judgment" seems a relatively straightforward way of referring to the total amount of damages awarded pursuant to the FTCA claim for all components of the veteran's injury as a result of VA hospital malpractice. Had it been intended to refer to only the lost-earnings component of such an award, such a limitation could have been accomplished with clarity and simplicity; we think it highly unlikely that Congress would have chosen the counter intuitive phrase "total amount" to refer to what would usually be only a part.

The ambiguity arises because that phrase is followed by the words "included in" the judgment. As the district court noted,

[w]hile the words "total amount" would generally suggest an intent to refer to any and all damages at issue, those words do not stand alone in § 351. Rather, they are linked by the phrase "included in" to the amount awarded as tort damages .... Therein lies the ambiguity. One amount "included in" another can be its equivalent, but it can also be some fraction thereof. The statutory language thus leaves unresolved the following question: to the total amount of *what* was Congress referring in the last phrase of § 351?

District Court Order at 7 (emphasis in original). One explanation that comes to mind lies in a plaintiff's ability to join more than one claim in a single suit and the consequent possibility that a judgment may award damages under the FTCA and grant other relief as well. *See generally* Fed. R.Civ.P. 18(a) ("A party asserting a claim to relief ... may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."). For example, if a veteran has both a claim for VA hospital malpractice and another claim on which the government may be sued under the FTCA, he could in the same suit assert both claims. Or a veteran alleging wrongs by the government and related wrongs by individuals could join both sets of claims in a single suit. *See* Fed.R.Civ.P. 20(a); *see, e.g., Rivera v. United States*, 928 F.2d 592 (2d Cir.1991) (asserting common-law tort claims against United States under FTCA and claims under the Fourth Amendment, the Due Process Clause, and 42 U.S.C. §§ 1981 and 1982 (1988) against various federal agents). In any suit in which claims in addition to the FTCA claim for VA hospital malpractice were pursued successfully, only so much of the judgment as represented the recovery for the VA hospital injuries would be subject to the § 351 setoff. Hence that recovery would be "included in," but not coextensive with, the moneys awarded by the judgment.

In sum, we read "the total amount included in such judgment" in § 351 to refer to the total amount of FTCA damages included in the judgment for any type of

injury resulting from VA medical treatment. Our interpretation is consistent with prior dicta of this Court and the Supreme Court interpreting § 351. *See United States v. Kubrick*, 444 U.S. 111, 116 n. 5, 100 S.Ct. 352, 356 n. 5, 62 L.Ed.2d 259 (1979) ("[u]nder 38 U.S.C. § 351, the benefits payments must be set off against the *damages awarded in tort*; and the increment in future monthly benefits is not paid until the aggregate amount of the benefits withheld equals the damages awarded" (emphasis added)); *Ulrich v. Veterans Administration Hospital*, 853 F.2d 1078, 1082 (2d Cir.1988) (construing 38 U.S.C. § 314 as not authorizing setoff against plaintiff's pain and suffering award, *"unlike § 351"* (emphasis added)).

This construction of the language of § 351 is supported by the interpretation of the Department of Veterans Affairs ("DVA"), the agency charged by Congress with the duty of administering the federal statutes that provide benefits for veterans, *see* 38 U.S.C. § 301(b) (1988), and whose interpretations are therefore entitled to "considerable weight," *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The DVA manual in effect at the time this case was tried provided that "[t]he total amount (or balance) to be recouped will be the gross amount of the judgment, compromise or settlement." DVA Benefits Manual M21–1, Change 355, May 19, 1983. And though the language of this administrative interpretation has since changed, the substance has not. *See* DVA Benefits Manual M21–1, Change 485, July 27, 1989 at Subchapter VIII, § 29.52(c) ("The amount received by the veteran from a judgment for a disability entitling [*sic*] to benefits under 38 U.S.C. 351 is subject to offset until such time as an amount equal to the judgment has been recouped from the veteran's compensation.").

Finally, the judicial and administrative interpretations are supported by the legislative history. When originally enacted in 1957, § 351 provided only for the payment of benefits, not for any setoff. The setoff portion was added in 1962 at the behest of the DVA, and the report of the Senate Committee on Finance analyzing the pertinent provision of the bill indicated that the setoff would be against the total amount of the FTCA recovery:

> [D]uplicate recoveries from the United States for the same disability or death under section 351 and the Federal Tort Claims Act would be precluded by providing a setoff against compensation benefits of the amount of *any* recovery pursuant to a civil judgment, settlement, or compromise.

S.Rep. No. 2042, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 USCCAN 3260, 3260 ("S.Rep. 2042") (emphasis added); *accord* 108 Cong.Rec. 15,623 (1962) (same) (remarks of Sen. Teague). The explanatory DVA statement appended to this Senate Report similarly stated that the goal of the setoff provision was

> to preclude duplicate recoveries for the same disability or death. It is possible today for an injured veteran to secure a judgment under the Federal Tort Claims Act and thereafter be awarded disability compensation from the Veterans' Administration for the same injury. Section 3 [of the bill] would require that if an individual is awarded a judgment or enters into a settlement or compromise by reason of a disability or death within the purview of section 351 no benefits authorized by section 351 shall be paid to that individual thereafter on account of that disability or death until the total amount of benefits which would be paid except for this provision equals *the total amount paid under the judgment, settlement, or compromise.*

S.Rep. 2042, at 3268 (emphasis added). Thus, the legislative history belies any intent on the part of Congress to limit the § 351 setoff to only that portion of a damage award that corresponds to a veteran's lost wages.

In sum, we are persuaded by the language of the statute, its administrative interpretation, and its legislative history that a veteran who is awarded both benefits under § 351 and damages under the FTCA for the same VA hospital injuries must

have his § 351 benefits set off against the entire amount of FTCA damages, not just against the lost earnings portion of the award.

## CONCLUSION

We have considered all of plaintiffs' arguments on this appeal and have found them to be without merit. The order of the district court is affirmed, and the case is remanded to the magistrate judge for a recalculation of damages in a manner not inconsistent with this opinion.