**Stanley BURRELL, Defendant–Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Docket No. 05–2945–cr.**

United States Court of Appeals, Second Circuit.

Argued: March 3, 2006.

Decided: Oct. 18, 2006.

Jane Simkin Smith, Millbrook, New York (Stanley Burrell, pro se, White Deer, Pennsylvania), for Defendant–Appellant (on submission).

Jason A. Jones, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief; Alyssa A. Qualls, Assistant United States Attorney, of counsel), Brooklyn, New York, for Appellee.

Before: CARDAMONE, WALKER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

The question presented by this appeal is whether defendant-appellant Stanley Burrell's criminal judgment became final after the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), thus entitling him to the retroactive application to his sentence of the new constitutional rule announced in *Booker.* To answer this question, we must first determine how the finality of Burrell's criminal judgment was affected by our ruling on his previous appeal in which we affirmed his conviction and sentence on one count but remanded the case to the district court to "correct the judgment to reflect dismissal" of an-

other count for which he was also convicted and sentenced. This determination turns on whether our remand was strictly ministerial in that it required a routine, nondiscretionary act by the district court that could not have been appealed on any valid ground, or whether our mandate left the district court the authority on remand to entertain the new arguments Burrell advanced. For the reasons that follow, we hold that our remand for the entry of an amended judgment was strictly ministerial and that Burrell's conviction therefore became final for purposes of direct review either when the Supreme Court denied his untimely petition for a writ of certiorari or when the time for filing such a petition expired. In either case, Burrell's conviction was final before the district court acted on remand and before the Supreme Court decided *Booker.* Burrell may therefore advance the claim that he should be resentenced under advisory Sentencing Guidelines pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), only on collateral review via a motion pursuant to 28 U.S.C. § 2255.

**BACKGROUND**

As we described in our previous opinion and summary order in this case, following a jury trial in February 1999, Burrell was convicted of conspiring to distribute crack cocaine and heroin and being the organizer of a continuing criminal enterprise ("CCE"). *United States v. Burrell,* 289 F.3d 220, 223 (2d Cir.2002); *United States v. Burrell,* 43 Fed.Appx. 403 (2d Cir.2002). In April 2000, the district court entered judgment against Burrell, sentencing him principally to two concurrent life sentences on the conspiracy and CCE convictions. The district court found Burrell's total offense level on the two counts of conviction to be 44 with a criminal-history category of six, which the court noted required it "to

impose a sentence of life imprisonment" on each count. The record reveals that, at the time Burrell was sentenced, the Sentencing Guidelines required the district court to impose a sentence of life imprisonment for the CCE conviction alone regardless of Burrell's conspiracy conviction given his adjusted offense level of 44 on the CCE count.

On appeal, we affirmed Burrell's conviction on the CCE charge but vacated his conviction for conspiracy because it was a lesser included offense of the CCE conviction. *Burrell,* 43 Fed.Appx. at 408 (citing *Rutledge v. United States,* 517 U.S. 292, 297–301, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996)). We also rejected Burrell's challenge to his sentence on the CCE count under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because, "[e]ven in the absence of a jury finding on narcotics quantity, the court properly could have sentenced Stanley Burrell to life imprisonment on the CCE count." *Burrell,* 289 F.3d at 225. We thus affirmed Burrell's conviction and sentence on the CCE count, *id.* at 226, and remanded "in order that the district court may correct the judgment to reflect the dismissal of only the conspiracy conviction," *Burrell,* 43 Fed.Appx. at 408. After denying Burrell's petition for rehearing en banc by order dated August 20, 2002, we issued a mandate on September 25, 2002, directing the district court to correct its judgment. Burrell thereafter filed a petition for writ of certiorari with the United States Supreme Court on January 30,

2003,[1] which was denied on March 24, 2003.[2] *Burrell v. United States,* 538 U.S. 937, 123 S.Ct. 1602, 155 L.Ed.2d 339 (2003).

On remand approximately two years later, by order dated March 29, 2005, the district court directed the clerk of the court to file an amended judgment reflecting our dismissal of the conspiracy claim. In a letter dated April 14, 2005, certified as delivered to prison officials on April 18, 2005, and filed with the district court on April 25, 2005, Burrell argued that the district court's March 2005 order should be corrected in the light of *Booker.* On April 20, 2005, the district court's clerk's office, acting on the March 2005 order, entered an amended judgment stating that Burrell's conspiracy charge was dismissed pursuant to our mandate. The district court subsequently summarily denied Burrell's request to "correct the judgment" in the light of *Booker.*

This timely appeal followed.

## DISCUSSION

Burrell challenges the district court's amended judgment, which embodies a sentence imposed by the district court under Sentencing Guidelines that were mandatory at the time of his sentencing in April 2000, as violating his Sixth Amendment rights under *Booker.* Burrell contends that his judgment of conviction was not final at the time *Booker* was decided and that *Booker's* rule therefore applies in his

---

**1.** Burrell's appellate counsel filed a motion to be relieved on September 19, 2002, which we granted on December 5, 2002. We appointed new counsel on December 19, 2002. Burrell's new counsel applied for an extension of time to file a petition of certiorari postmarked December 24, 2002, and received by the Supreme Court on December 30, 2002. The clerk of the Supreme Court notified Burrell by letter dated December 30, 2002, that the

application was untimely, but that he could file a petition for a writ of certiorari and that it would be submitted to the Court with "a notation of untimeliness." Burrell filed his petition shortly thereafter.

**2.** Burrell's petition challenged the CCE conviction on two grounds, but did not raise any sentencing claims.

case because under the Supreme Court's ruling in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, ... [whose judgments are] not yet final," *id.* at 328, 107 S.Ct. 708.

This case requires us to determine whether a criminal judgment is final when we have affirmed a defendant's conviction and sentence on at least one count, but remanded for the district court to dismiss the defendant's conviction and sentence on another count. In order to resolve this question, we must consider the interplay between the law governing the finality of criminal judgments and the "mandate rule," a branch of the law-of-the-case doctrine. Both questions. here—whether a criminal judgment is final and whether our mandate foreclosed the district court from exercising discretion—present issues of law over which we have plenary review. *See United States v. Camacho,* 370 F.3d 303, 305 (2d Cir.2004) (stating that whether a criminal judgment is final for purposes of Federal Rule of Criminal Procedure 33 is a question of law subject to *de novo* review). Because we conclude that our mandate required only a ministerial act, Burrell's conviction was final, at the latest, when the Supreme Court denied his untimely petition for a writ of certiorari on March 24, 2003, before the district court acted on remand and before the Supreme Court decided *Booker.* Burrell may therefore advance his *Booker* claim, if at all, in a motion pursuant to 28 U.S.C. § 2255.

## I. *Finality*

The Supreme Court has made clear that "[a] judgment of conviction includes both the adjudication of guilt and the sentence." *Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); *Teague v. Lane,* 489 U.S. 288, 314 n. 2, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ("As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant."); *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."). A criminal judgment becomes final for purposes of appellate review, therefore, "after the district court sentences the defendant and 'disassociates itself from the case.'" *Camacho,* 370 F.3d at 306 (quoting *Clay v. United States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)). Moreover, when a defendant is convicted at one trial on multiple counts of an indictment, the district court enters a single judgment of conviction. *See* Fed.R.Crim.P. 32(k).

Of course, "[f]inality is variously defined," and "its precise meaning depends on context." *Clay,* 537 U.S. at 527, 123 S.Ct. 1072. In *Camacho,* we discussed finality for purposes of Federal Rule of Criminal Procedure 33, which formerly provided that a motion for a new trial based on newly discovered evidence was timely as long as it was filed "before or within two years after final judgment." Fed.R.Crim.P. 33 (amended 1998). We held that a conviction is final for these purposes following the affirmance on appeal of the adjudication of guilt, notwithstanding a remand for resentencing, because "[a] defendant's ability to bring newly discovered evidence to light in a new trial in no way hinges on the fate of the sentence imposed on his or her original conviction." 370 F.3d at 307. With respect to motions to vacate under 28 U.S.C. § 2255, which may be filed within one year from "the date on which the judgment of conviction becomes final," we noted that it "makes sense, from an efficiency standpoint, to require criminal defendants to file such motions only after

both their convictions and sentences have withstood appellate scrutiny." *Id.* We subsequently noted that a judgment of conviction becomes final for purposes of § 2255 "when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'" *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir.2005) (quoting *Clay,* 537 U.S. at 527, 123 S.Ct. 1072). We have not yet considered, however, when a criminal judgment becomes final for purposes of retroactivity of a new constitutional rule when we affirm one count of conviction and its sentence but remand for the district court to enter an amended judgment reflecting the dismissal of another count of conviction.

We find it noteworthy that the Supreme Court, in assessing its jurisdiction to review final state court judgments pursuant to 28 U.S.C. § 1257, has not found all remands to lower state courts to undermine a judgment's finality. Instead, the Court has traditionally considered whether a remand left more than a ministerial act to be done. Where a remand is "only for a ministerial purpose, such as the correction of language in the trial court's judgment for the defendants ..., the judgment of the [state court] is final for purposes of 28 U.S.C. § 1257." *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 216 n. 8, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68, 68 S.Ct. 972, 92 L.Ed. 1212 (1948) ("[I]f nothing more than a ministerial act remains to be done, such as the entry of a judgment upon a mandate, the decree is regarded as concluding the case and is immediately reviewable."); *see also Bateman v. Arizona,* 429 U.S. 1302, 1306, 97 S.Ct. 1, 50 L.Ed.2d 32 (1976) (Rehnquist, J., in chambers) (concluding that the state-court decision in the case was not final in denying a motion for bail pending certiora-

ri because the state's highest court "did not remand simply for the performance of a ministerial duty—*e.g.,* the reinstating of a judgment of conviction and sentence—but for the initial imposition of a sentence"). A "ministerial" duty is one that "involves obedience to instructions or laws instead of discretion, judgment, or skill." Black's Law Dictionary 1017 (8th ed.2004); *cf. Work v. United States ex rel. Rives,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925) ("Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion.").

We followed this logic in *Morgan v. United States,* 968 F.2d 200 (2d Cir.1992). In *Morgan,* we determined that we had jurisdiction under 28 U.S.C. § 1291 because the district court decision had concluded the litigation and remanded the case to the magistrate judge on purely ministerial matters. *Id.* at 204. We held that jurisdiction under § 1291 existed because "when what remains to be done is merely routine, that routine decision will not spark an appeal." *Id.* Our ruling in *Morgan* on the finality requirement of 28 U.S.C. § 1291 accords with the Supreme Court's analysis of the finality requirement of § 1257.

We see no reason why the principle underlying these cases—that a ministerial remand does not delay a judgment's finality because the lower court's entry of a corrected judgment could not give rise to a valid appeal—should not apply in determining when a criminal conviction is final for purposes of retroactivity of a new constitutional rule. We must, therefore, determine whether our remand in this case was strictly ministerial and left nothing for the district court to do but enter an amended judgment in accordance with the dictate of our mandate, or whether our

mandate left the district court some discretion to act on remand.

## II. *The Mandate Rule*

■ The mandate rule is a branch of the law-of-the-case doctrine. This rule holds "that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir.1993); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir.2001) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." (citation and internal quotation marks omitted)). "In other words, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals. Of course, there is a corollary to this rule—if an issue was not part of the appellate decision, a trial court may consider the matter." *Minicone*, 994 F.2d at 89 (internal citation and quotation marks omitted). Put differently, "[w]hen an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977). "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Ben Zvi*, 242 F.3d at 95.

■ We have recently explained the mandate rule's application in the sentencing context, noting that "[t]he nature of the issues for resolution in the district court on a remand from the court of appeals depends principally on the issues that had been presented in the appeal and the directions given by the court of appeals in ordering further proceedings." *United States v. Barresi*, 361 F.3d 666, 672 (2d Cir.2004). We have stated that a "resentencing usually should be *de novo* when a Court of Appeals reverses one or more *convictions* and remands for resentencing" or otherwise "effectively undoes the entire 'knot of calculation'" under the Sentencing Guidelines. *United States v. Quintieri*, 306 F.3d 1217, 1228 (2d Cir.2002). On the other hand, "absent explicit language in the mandate to the contrary, resentencing should be limited when the Court of Appeals upholds the underlying convictions but determines that a *sentence* has been erroneously imposed and remands to correct that error." *Id.* This rule that the district court's authority on remand is limited to those issues left open by the mandate is a firm one and rigidly binds the district court.[3] *See id.* at 1225.

## III. *Analysis*

Our mandate in this case directed the district court to undertake a single non-discretionary act. It is significant that although we remanded for resentencing of Brian Burrell, appellant's brother and co-defendant, because the district court's

---

**3.** The more flexible branch of the law-of-the-case doctrine, which "is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court," *Quintieri*, 306 F.3d at 1225, is not at issue here. Where it is implicated, we may depart from our previous ruling in a case in certain circumstances. "We have stated that we will not depart from this sound policy [of adhering to our prior ruling in a case] absent 'cogent' or 'compelling' reasons. The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir.2000) (internal quotation marks omitted).

finding of drug quantity increased the maximum sentence that could be imposed for Brian Burrell's conspiracy conviction in violation of *Apprendi*, we explicitly affirmed appellant's conviction and sentence on the CCE count and remanded his case solely so that the district court could "correct the judgment to reflect the dismissal of only the conspiracy conviction." *Burrell*, 43 Fed.Appx. at 408. Although our opinion did not state why we did not remand for resentencing in the light of our vacating of Burrell's conspiracy conviction, the record reflects that we affirmed Burrell's sentence because the Guidelines mandated a sentence of life imprisonment on Burrell's CCE conviction alone. This is one of the rare cases, therefore, where our reversal of a conviction did not affect the "knot of calculations" under the Guidelines and where remand for resentencing was unnecessary. *See Quintieri*, 306 F.3d at 1227–28.

In affirming Burrell's CCE conviction and sentence, our mandate foreclosed the district court from modifying either of them on remand. Burrell could have undone his conviction or sentence only by a timely petition for a writ of certiorari or some other appropriate procedural vehicle. Under both the specific dictate and the spirit of our mandate, no issues, including sentencing issues, remained open for reconsideration on remand. This was not a

mandate that permitted the district court to undertake any action other than the ministerial correction explicitly set forth. Our directions to the district court unambiguously permitted nothing more than the entry of an amended judgment reflecting the dismissal of Burrell's conspiracy conviction. Relitigation of any issue in the district court would therefore have been beyond the scope of the district court's authority under our mandate. Our remand directing the dismissal of the conspiracy count was therefore strictly ministerial.[4]

Having concluded that our remand was ministerial and thus incapable of disturbing Burrell's conviction once it became final, we must next determine whether appellant's conviction became final before *Booker* was decided. As we have discussed, a remand for ministerial purposes, such as the correction of language in a judgment or the entry of a judgment in accordance with a mandate, does not delay a judgment's finality. We hold that because we affirmed Burrell's adjudication of guilt and sentence on the CCE count and our remand was strictly ministerial, his conviction became final for purposes of retroactive application, on remand from direct appeal, of new constitutional rules either when the Supreme Court denied his petition for a writ of certiorari or when his time for filing a certiorari petition expired.

---

4. In concluding that the remand in this case was strictly ministerial, we do not express the view that the district court would have been precluded from resentencing Burrell under *Booker* had we remanded for either *de novo* or a limited resentencing. *See United States v. Bad Marriage*, 439 F.3d 534, 537–38 (9th Cir. 2006) (affirming the district court's resentence under *Booker* when the court of appeals had remanded for resentencing "within the appropriate range" after concluding that "an upward departure ... was not justified by the facts" and the Supreme Court had decided *Booker* before resentencing on remand (citation and internal quotation marks omitted));

*United States v. Lang*, 405 F.3d 1060, 1064–65 (10th Cir.2005) (concluding that the mandate rule did not prevent the district court from considering Lang's Sixth Amendment claim at resentencing when the court of appeals had affirmed the convictions but remanded for resentencing because the district court had erred in departing downward). In fact, in the case of Brian Burrell, after we initially remanded for resentencing in the light of an *Apprendi* error, *Burrell*, 289 F.3d at 226, we remanded again on his second appeal for proceedings in conformity with *Booker* and *Crosby*.

*See Clay,* 537 U.S. at 527, 123 S.Ct. 1072. We need not and do not decide here at what point a conviction becomes final when the Supreme Court denies an untimely petition for a writ of certiorari. Assuming that Burrell's conviction became final on the latest possible date—when the Supreme Court denied his untimely petition on March 24, 2003—Burrell's case had already become final before *Booker* was decided.[5] Because appellant has not filed a petition pursuant to § 2255, we do not consider further Burrell's ability to challenge his sentence via collateral attack.[6]

Our holding accords with the ruling of the Fourth Circuit in *United States v. Wilson,* 256 F.3d 217 (4th Cir.2001), although our reasoning is somewhat different. Wilson, like Burrell, had been convicted of conspiracy and CCE charges and was sentenced to concurrent life terms. *Id.* at 218. On Wilson's initial appeal, the Fourth Circuit vacated his conviction and sentence on the conspiracy count and remanded with instructions to dismiss that count. *Id.* at 218–19. Wilson sought immediate review in the United States Supreme Court, which was denied. *Id.* at 219. The question presented in the Fourth Circuit following entry of the amended judgment on remand was whether Wilson's conviction had become final for

---

**5.** Thus, we do not consider Burrell's argument based on *Booker* that his sentence on the CCE count is invalid under *Apprendi* because the law-of-the-case doctrine prevents us from considering his argument that the failure to charge drug quantity in the indictment affected both his conspiracy and CCE convictions. We note, however, that our opinion in Burrell's first appeal rejected his claim under *Apprendi* with respect to his life sentence on the CCE count, which has a statutory sentencing range of twenty years' to life imprisonment, 21 U.S.C. § 848(a). We rejected that claim because a district court may make findings of drug quantity in imposing a life sentence for a CCE conviction without exceeding the statutory maximum and, therefore, without violating *Apprendi. See United States v. Rivera,* 282 F.3d 74, 77 (2d Cir.2002) (per curiam) ("In sentencing a defendant to a life term on a CCE count, a court's reliance on the drug quantity table and its findings of drug quantity is irrelevant for *Apprendi* purposes."); *id.* at 75–77 (affirming the defendant's sentence of life imprisonment on a CCE count despite previous vacation of a conspiracy conviction that was a lesser included offense and for which drug quantity had not been charged in the indictment).

**6.** Under *Guzman v. United States,* 404 F.3d 139, 144 (2d Cir.2005), *Booker* does not apply retroactively to cases on collateral review, but this issue is currently pending before the Supreme Court. *See Burton v. Waddington,* ——— U.S. ———, 126 S.Ct. 2352, 165 L.Ed.2d 278 (2006) (granting certiorari). Were Burrell to petition for a writ of certiorari from the denial of appellant's § 2255 petition, the Supreme Court would be free to hold the petition until *Burton* is decided so that Burrell might benefit if the Supreme Court were to reject the holding of *Guzman.* The Supreme Court recently held, however, that the one-year limitations period of § 2255 begins to run on the date a right was newly recognized by the Supreme Court, and not when the asserted right is made retroactive, *Dodd v. United States,* 545 U.S. 353, 125 S.Ct. 2478, 2482–83, 162 L.Ed.2d 343 (2005), and Burrell did not file a motion under § 2255 by January 12, 2006, the one-year anniversary of the Supreme Court's ruling in *Booker.* Nor did the district court recharacterize Burrell's motion as one made under § 2255 following the procedure we set forth in *Adams v. United States,* 155 F.3d 582, 584 (2d Cir.1998), and Burrell has for obvious reasons objected to the government's characterization of his challenge here as a collateral attack on the judgment in this case. We express no view here as to whether Burrell would be entitled to equitable tolling of § 2255's limitations period were he to seek such relief. *See Smith v. McGinnis,* 208 F.3d 13, 17–18 (2d Cir.2000) (per curiam) (holding that AEDPA's statute of limitations may be equitably tolled only in "rare and exceptional circumstance[s]" and only if "the party seeking equitable tolling [has] acted with reasonable diligence throughout the period he seeks to toll" (internal quotation marks omitted)).

purposes of § 2255 when the Supreme Court denied his petition for a writ of certiorari or after the district court dismissed Wilson's conspiracy conviction and entered an amended judgment. In an opinion that appeared to be based on the premise that there are separate judgments of conviction for each count in a multiple-count criminal case, the Fourth Circuit held that the one-year limitations period for filing a motion pursuant to § 2255 had begun to run upon the denial of Wilson's petition for certiorari. *Id.* Central to the court's analysis, however, was that the vacation of the conspiracy count had no effect on Wilson's other convictions and that the court had remanded the case for the limited purpose of dismissing Wilson's conspiracy conviction.

The Fourth Circuit later clarified in *United States v. Dodson,* that only a single judgment of conviction "arises from a case ... in which a defendant is convicted at one trial on multiple counts of an indictment." 291 F.3d 268, 272 (4th Cir.2002). Citing *Wilson,* the *Dodson* court noted that "finality is not delayed if an appellate court disposes of all counts in a judgment of conviction but remands for a ministerial purpose that could not result in a valid second appeal." *Id.* at 275. The court went on to state, however, that a non-ministerial remand, such as a remand for resentencing, "may supply a defendant with the basis for a nonfrivolous appeal" and that "[i]n such cases, the one-year statute of limitations in § 2255 does not begin to run until there is a final judgment of conviction as to all counts in the judgment of conviction." *Id.* at 275–76. While we do not adopt the view, implicit in *Wilson,* that a defendant can have multiple judgments of conviction in a single case, we agree with the Fourth Circuit's reconsidered analysis in *Dodson* that when a remand leaves only a ministerial task for the district court to perform and the re-

maining counts cannot be challenged on valid grounds in the district court, the conviction becomes final for purposes of direct review upon the denial of a petition for a writ of certiorari or the expiration of time for filing such a petition.

We thus do not accept the analysis of the Ninth Circuit in *United States v. Colvin,* 204 F.3d 1221 (9th Cir.2000). The issue in *Colvin* was essentially the same as the one presented in *Wilson:* to determine at what point a judgment of conviction becomes final for purposes of § 2255 where an appellate court "partially affirms and partially reverses a conviction and remands to the district court with instructions to amend the judgment." *Id.* at 1222. On Colvin's first appeal, the Ninth Circuit reversed his conviction on one count while affirming his other convictions and his sentence. The court remanded the case to the district court "with directions to strike the conviction on count 9 and to reduce the special assessment from $200.00 to $150.00." *Id.* Colvin moved in the district court on remand for resentencing, but the district court found that it had no authority under the mandate to rethink the sentence. On a subsequent appeal, the Ninth Circuit stated that "the key inquiry is whether the district court's entry of the amended judgment could have been appealed." *Id.* at 1224. The court reasoned that Colvin "could have appealed the district court's determination of whether the mandate left it any discretion" and that "whether a district court has discretion to act on remand is not always as clear as it may seem." *Id.* at 1224–25. The court thus held that a judgment is not final if the appellate court reverses any portion of the district court's judgment and remands to the district court, even if the remand is only ministerial, and concluded, therefore, that Colvin's judgment of conviction did not become final until the time for appeal-

ing the amended judgment had passed. *Id.* at 1225. It offered three advantages to adopting this "clear, easy-to-follow rule": (1) a judgment's finality "will not turn on an assessment of whether [a] mandate leaves matters open to the district court," an assessment that is difficult to make in advance; (2) parties will not litigate the finality question because it will be clearly defined; and (3) defendants will be able "to exhaust their appeals on direct review before bringing collateral attacks." *Id.* at 1225–26. The Ninth Circuit adhered to this ruling in *United States v. LaFromboise,* 427 F.3d 680 (9th Cir.2005).

We disagree with both the reasoning and the conclusion of *Colvin.* First, we are not persuaded that a defendant will have to speculate about the effect of a mandate on the finality of his or her judgment of conviction. Under our holding today, a criminal judgment is final when we reverse some portion of the judgment and remand to the district court only if we affirm both the adjudication of guilt and the sentence on at least one count, and our remand is for the strictly ministerial task of correcting the judgment to reflect the dismissal of one or more counts, whose dismissal must not have affected the sentence, as indicated by our affirmance. We fail to see how a mandate expressed in such categorical, final terms could be construed to leave matters open for the district court to decide.[7] In the face of such an unambiguous mandate, it will be clear that there are no valid grounds for appeal

from the entry of the corrected judgment. Second, our rule—that a mandate affirming both a defendant's conviction and sentence on at least one count makes a remand for purposes of entering an amended judgment ministerial—is sufficiently clear that we do not expect parties to litigate it any more than they litigate other settled issues. Third, our holding will not prevent defendants from exhausting their claims on direct appeal before bringing collateral attacks. Where a remand is strictly ministerial and the appellate court has affirmed both the conviction and sentence, a district court lacks the authority to reconsider any issue. A defendant in this circumstance may thus file either a petition for a writ of certiorari in the Supreme Court—which Burrell did—or a motion pursuant to § 2255 as soon as our court affirms the remaining count or counts of the judgment. Moreover, our rule is consistent with Congress's policy decision in enacting a one-year limitations period for bringing a motion under § 2255 "to limit the collateral review of stale claims." *Wilson,* 256 F.3d at 220; *see also Carey v. Saffold,* 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (discussing the "statutory purpose [of the Antiterrorism and Effective Death Penalty Act] of encouraging prompt filings ... in order to protect the federal system from being forced to hear stale claims").

In short, we affirmed Burrell's conviction and his sentence on his CCE count in

---

7. We are wholly unpersuaded by the *Colvin* court's reliance on *Nguyen v. United States,* 792 F.2d 1500, 1502–03 (9th Cir.1986), for the proposition that a district court's interpretation of a mandate is always subject to appeal. In *Nguyen,* a civil case, the court of appeals remanded to the district court with specific instructions to enter summary judgment in favor of the government. *Id.* at 1501. On remand, however, the district court did not enter summary judgment, but instead allowed the plaintiff to amend his complaint to add new claims. *Id.* at 1501–02. On the second appeal, the court held that its mandate had not precluded the district court's action. We fail to see how this circumstance, in which the appellate court had not originally ruled on amendment of the complaint, is at all analogous or relevant to a case where the court of appeals has explicitly ruled on, and affirmed, a criminal conviction and sentence and remanded for only a ministerial act.

170

May 2002. Our mandate to the district court permitted it to undertake only a single, nondiscretionary act—the entry of an amended judgment including only Burrell's conviction and sentence on the CCE count. Because Burrell could raise no new valid challenges in the district court on remand, but only through some other procedural vehicle, his conviction was final as of March 24, 2003, at the latest. The change in the law following the Supreme Court's ruling in *Booker*, decided long after Burrell's petition for a writ of certiorari was denied, is inapplicable at this stage of the proceeding. Burrell could raise such a claim only via a collateral attack pursuant to § 2255.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court on remand not to resentence Burrell but simply to enter an amended judgment in accordance with the dictate of our earlier mandate.