United States v. Stegemann

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of July, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         PIERRE N. LEVAL,
         REENA RAGGI,
              Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
         Appellee,

         -v.-                                    16-2596

JOSHUA G. STEGEMANN,
         Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:              JAMES P. EGAN, Assistant
                            Federal Public Defender, for
                            Lisa A. Peebles, Federal
                            Public Defender, Syracuse,
                            NY.

**FOR APPELLEE:**                    FINNUALA K. TESSIER (Kenneth
                                    A. Blanco, Trevor N.
                                    McFadden, on the brief),
                                    Attorney, United States
                                    Department of Justice,
                                    Washington, D.C.

                                    Steven Clymer (on the brief),
                                    for Richard S. Hartunian,
                                    United States Attorney for
                                    the Northern District of New
                                    York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of conviction is **AFFIRMED** and the order of forfeiture is **AFFIRMED** in part, **REVERSED** in part, and **VACATED** and **REMANDED** in part.

Joshua Stegemann was convicted after a jury trial of various drug and firearm-related offenses. The District Court for the Northern District of New York (Sharpe, J.) sentenced him principally to thirty years' imprisonment and ordered the forfeiture of money, firearms, ammunition, and a vehicle. Stegemann appeals his conviction based on the failure to suppress evidence allegedly obtained in violation of his statutory and constitutional rights, and he appeals the forfeiture of the money and vehicle based on a lack of connection to his crimes. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

In 2013, the Berkshire County (Massachusetts) Drug Task Force obtained authorization from a Berkshire County judge to wiretap eight cell phones belonging to Stegemann, who lived in nearby Rensselaer County, New York and was believed to be supplying drugs to individuals in Berkshire County. The Berkshire County investigators also reached out to their counterparts in Rensselaer County (who coordinated with the New

York State Air National Guard) to conduct aerial surveillance of Stegemann on five separate occasions in March and April 2013.

The wiretaps on Stegemann's phones captured several conversations regarding drug dealing. Most notably, on April 15, 2013, Stegemann discussed selling oxycodone pills to an individual named Robert Turner, who testified at trial that he purchased 52 oxycodone pills from Stegemann on that date. This transaction (and Stegemann's apparent retrieval of the pills from his backyard) was captured on video by aerial surveillance.

Stegemann's home at 138 Losty Road in Stephentown, New York was on a one-acre rectangular lot in the northwest corner of a much larger plot of land owned by his grandparents, Francis and Audrey Foody. No fence or other physical barrier separated the properties; Stegemann's yard merged with the Foody property, which was essentially an open field bounded by roads and woods.

On April 29, 2013, Rensselaer County investigators obtained a warrant to search "all of the property located at 138 Losty Road" and "any other areas that [Stegemann] may have custody or control of." App'x at 556. When law enforcement officers executed the warrant on April 30, Stegemann fled and was immediately apprehended several hundred feet away on the Foody property.

Officers seized the following from Stegemann's house: a loaded .20-gauge shotgun; shotgun shells; a video security system (with footage of Stegemann accessing various places on and adjoining his property where guns, drugs, and cash were found); digital scales; rubber gloves; "Muscle Milk" containers; eight cell phones; and approximately $16,000 cash in white envelopes marked with the number "5."

Other locations on Stegemann's property yielded: over 23 grams of cocaine; nearly 3 grams of heroin; over 7 grams of oxycodone; a loaded revolver; ammunition; and over $280,000 in white envelopes marked with the number "5."[1]

---

[1] The drugs were packaged in rubber gloves like the ones found in Stegemann's house. The envelopes of cash were stored in

Officers also searched the Foody property near the path of Stegemann's flight.  A police dog alerted officers to a rock pile on the eastern edge of the property, where they discovered over 580 grams of cocaine, over 29 grams of heroin, and over 78 grams of oxycodone.  The dog also alerted officers to a second rock pile on the eastern border, where they discovered a loaded handgun and ammunition.

Based on phone calls recorded at Rensselaer County Jail between Stegemann and his mother and sister, officers obtained a warrant to search a safe located in the sister's attic, where they discovered approximately $160,000 in envelopes marked with the number "5."  No additional evidence was found during a search pursuant to a warrant of areas adjoining 138 Losty Road.

Stegemann was convicted of possession with intent to distribute cocaine, heroin, and oxycodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C); possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Stegemann argues that his conviction should be set aside because the district court failed to suppress: (1) evidence gathered through aerial surveillance, which was conducted without a warrant; (2) evidence obtained and derived from the wiretaps, which he claims violated 18 U.S.C. § 2518; and (3) evidence seized from the Foody property, which he asserts was within the curtilage of his home but beyond the scope of the search warrant.  Stegemann also argues that the money and vehicle seized by law enforcement following his arrest were improperly forfeited.

**1.**   The district court found that Stegemann's challenge to the aerial surveillance was "waived as insufficiently raised." United States v. Stegemann, 40 F. Supp. 3d 249, 259 n.8 (N.D.N.Y. 2014).   We review that decision for abuse of discretion or clear error.   See United States v. Crowley, 236 F.3d 104, 110 (2d Cir. 2000).   Buried in Stegemann's voluminous pretrial motions were

_____

"Muscle Milk" containers, which were also found in Stegemann's house.

4

two conclusory sentences alleging that aerial footage had to be suppressed because the surveillance violated his (unspecified) rights.  In contravention of the court's local rules,[2] the motion in which these sentences appeared did not describe the aerial surveillance or cite any supporting legal authority.  The district court acted within its discretion by treating this perfunctory, undeveloped argument as forfeited. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); cf. United States v. Botti, 711 F.3d 299, 313 (2d Cir. 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).  Because Stegemann has not shown good cause for his failure to adequately raise his aerial surveillance argument in the district court, we do not address it.  See United States v. Yousef, 327 F.3d 56, 125 (2d Cir. 2003).

    **2.**    Stegemann argues that the wiretap warrants failed to satisfy various requirements of 18 U.S.C. § 2518.  Even if true, any error regarding the admission of wiretap evidence was harmless.  See Kotteakos v. United States, 328 U.S. 750, 764-65 (1946) (holding that a non-constitutional error is harmless where an appellate court has a fair assurance that the error did not substantially affect the verdict).

    "[T]he strength of the government's case is the most critical factor in assessing whether error was harmless." United States v. Ramirez, 609 F.3d 495, 501 (2d Cir. 2010).  The non-wiretap evidence of Stegemann's guilt was overwhelming. With respect to drug trafficking, the evidence included: (1) Turner's testimony that he purchased oxycodone from Stegemann; (2) aerial surveillance footage capturing that purchase; (3)

---

[2] See Local Rule of Criminal Procedure for the Northern District of New York 12.1(a) ("The moving party must specifically articulate the relief requested and must set forth a factual basis which, if proven true, would entitle [him] to the requested relief. . . .  A separate memorandum of law is unnecessary when the case law may be concisely cited (i.e., several paragraphs) in the body of the motion.").

the vast quantities of cocaine, heroin, and oxycodone stashed in rubber gloves in locations around Stegemann's property and the adjoining Foody property; (4) the digital scales, rubber gloves, and eight cell phones found in Stegemann's home; (5) the hundreds of thousands of dollars in cash found in similarly marked envelopes in and around Stegemann's home and in his sister's safe; and (6) footage from Stegemann's home security cameras and from aerial surveillance showing Stegemann accessing locations where drugs and cash were stored.

With respect to Stegemann's conviction for possessing firearms in furtherance of drug trafficking and possessing firearms and ammunition as a convicted felon, the evidence included: (1) the loaded shotgun in Stegemann's bedroom and two other loaded guns outside of his house in areas he was seen accessing; (2) the proximity of two of the guns to hidden drugs and cash; (3) detection of one of the guns by a dog trained only to detect drugs; (4) the illegal possession of the guns, one of which was stolen; and (5) footage from his home security cameras showing him accessing areas where guns were found within minutes of accessing areas where cash and drugs were found. See United States v. Snow, 462 F.3d 55, 62 n.6 (2d Cir. 2006) (noting that a firearm's connection with drug trafficking is evidenced by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found" (internal quotation marks omitted)).

Any error affecting the wiretaps would not have required suppression of the evidence seized during the search of 138 Losty Road (notwithstanding that the warrant application cited the wiretapped calls). That is because probable cause to search the property existed even without consideration of the wiretapped calls. See United States v. Reilly, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996) ("[A] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." (internal quotation marks omitted)). In addition to citing the wiretapped calls, the search warrant application relied on: (1) interviews with confidential sources

6

establishing that Stegemann was selling narcotics from 138 Losty Road; (2) aerial surveillance showing that on April 15, 2013, Stegemann retrieved something from a rock pile in his backyard, drove to a spot on a nearby road, and engaged in a hand-to-hand transaction with someone in another car; (3) knowledge of Massachusetts police that Stegemann had been involved in drug dealing for years; (4) Stegemann's previous arrest for narcotics and weapons charges; and (5) statements by confidential informants that Stegemann had several stolen vehicles on his property.

3.   Stegemann contends that the drugs, loaded handgun, and ammunition seized from rock piles on the eastern edge of the Foody property should have been suppressed because that area was outside the scope of the search warrant but within the curtilage of his home.  The district court found that this area constituted an open field, a determination that required finding that the area was beyond the curtilage.  See Oliver v. United States, 466 U.S. 170, 180 (1984) ("[O]nly the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home.").  "[W]e review the district court's findings underlying the scope of curtilage as essentially factual ones, reversible only for clear error." Reilly, 76 F.3d at 1275 (internal quotation marks omitted).

The district court's curtilage finding was not clearly erroneous.  The issue is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  Id. at 1276 (internal quotation marks omitted).  The rock piles do not warrant curtilage protection because they were located on the property of Stegemann's grandparents, several hundred feet away from his house, and had no apparent use other than to hide his drugs, loaded handgun, and ammunition.  See United States v. Dunn, 480 U.S. 294, 301 (1987) (listing factors to consider when demarcating curtilage); Oliver, 466 U.S. at 178 ("[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." (emphasis added)).

4.   Stegemann argues, and the government concedes, that the vehicle seized from his property and the roughly $456,000

7

in cash found on his property and in his sister's safe were not connected to the crimes of which he was convicted.  We therefore reverse the forfeiture order with respect to these items.[3]

Stegemann also argues that he should not have to forfeit the $20,494.67 that was taken from his bank accounts.  These funds were seized as substitute assets to reduce a money judgment in the amount of $93,545, a sum that represents the value of the narcotics found during the search of Stegemann's property.  The record does not reveal why the government obtained a money judgment based on the value of the drugs seized, particularly where the defendant was convicted of possession with intent to distribute and no proceeds resulting from the crime of conviction appear to have been attributed to him.  Because we cannot decide whether the bank accounts were correctly forfeited as substitute assets pursuant to 21 U.S.C. § 853(p) without a clearer understanding of what they substitute for, we vacate the money judgment and remand for further development of the record.

Accordingly, we hereby **AFFIRM** the judgment of conviction. As to the forfeiture order, we **AFFIRM** with respect to the firearms and ammunition; **REVERSE** with respect to the vehicle and cash; and **VACATE** and **REMAND** with respect to the bank accounts.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

---

[3] Stegemann does not contest the forfeiture of the firearms and ammunition.  We therefore affirm the forfeiture order with respect to these items.