*Stegemann v. United States*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2024
No. 23-7712

**JOSHUA G. STEGEMANN,**
*Petitioner-Appellant*,

v.

**UNITED STATES OF AMERICA,**
*Appellee*.[*]

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: NOVEMBER 21, 2024
DECIDED: MARCH 20, 2025

---

Before:     LIVINGSTON, *Chief Judge*, and JACOBS and MENASHI,
*Circuit Judges*.

Petitioner-Appellant Joshua G. Stegemann appeals from a
judgment of the district court denying his sixth motion to amend his
§ 2255 petition. Stegemann sought to amend his petition to add a

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

claim that his counsel was ineffective for failing to argue that his prior conviction under Massachusetts General Laws ch. 94C, § 32E(b), did not qualify as a "controlled substance offense" under the sentencing guidelines because the "bringing in" provision of the state statute criminalizes conduct that federal law does not. The district court denied leave to amend because the proposed amendment repeated an argument that the Second Circuit had already rejected in Stegemann's prior appeal. We agree with the district court that Stegemann's motion to amend was properly denied as futile because he has not provided a sufficient justification to depart from the law of the case. We affirm the judgment of the district court.

---

ZACHARY S. SEGAL (Richard W. Levitt, *on the brief*), Levitt & Kaizer, New York, NY, *for Petitioner-Appellant*.

RAJIT S. DOSANJH, Assistant United States Attorney (Richard D. Belliss, Assistant United States Attorney, *on the brief*), *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

---

MENASHI, *Circuit Judge*:

Petitioner-Appellant Joshua G. Stegemann appeals from an order of the U.S. District Court for the Northern District of New York, entered on October 18, 2023, denying Stegemann's sixth motion for leave to amend his § 2255 petition. Stegemann challenges the determinations of the district court that (1) his motion for leave to amend was dilatory or otherwise abusive and (2) the amendment would be futile. We agree with the district court that Stegemann's

2

motion for leave to amend was properly denied as futile, so we need not decide whether the motion was also dilatory or otherwise abusive. We affirm the judgment of the district court.

## BACKGROUND

In August 2015, Stegemann was convicted following a jury trial of (1) possession of cocaine, heroin, and oxycodone with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The Presentence Investigation Report identified Stegemann as a "career offender" based on (1) his 1999 conviction in Massachusetts for trafficking cocaine in violation of Massachusetts General Laws ch. 94C, § 32E(b), and (2) his 2003 conviction in Massachusetts for distribution of cocaine. Stegemann was sentenced to an aggregate term of imprisonment of 360 months. The district court entered judgment on July 20, 2016, and this court affirmed the judgment on direct appeal. *See United States v. Stegemann*, 701 F. App'x 35, 36 (2d Cir. 2017).

On June 28, 2018, Stegemann moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, raising multiple claims of ineffective assistance of counsel. The district court permitted Stegemann to amend his petition five times to add additional claims, including the claim that his sentencing attorney was ineffective for failing to argue that neither his 1999 nor his 2003 Massachusetts conviction qualified as a "controlled substance offense" for the purpose of the career offender guideline. On June 30, 2020, the district court denied Stegemann's § 2255 petition in its entirety and declined to issue a certificate of appealability. This court granted a motion for

a certificate of appealability for issues including the claim of ineffective assistance.

On appeal, Stegemann abandoned his argument regarding his 2003 conviction and argued instead that his counsel was ineffective for failing to assert at sentencing that his 1999 Massachusetts conviction under § 32E(b) did not qualify as a "controlled substance offense" under U.S.S.G. § 4B1.2. The sentencing guidelines define "controlled substance offense" to include a prohibition on the "import" of a controlled substance. According to Stegemann, the word "import" must be understood to refer to the importation into the United States from abroad. Because the Massachusetts statute prohibits the "bringing in" of a controlled substance from anywhere out of state—even from another state—the scope of the state statute exceeds the guidelines definition. Our court rejected the "bringing in" theory and affirmed the decision of the district court. We reasoned as follows:

> Stegemann cites to no authority to support his claim that, at the time of his sentencing, his 1999 conviction under Mass. Gen. Laws ch. 94C, § 32E(b) did not qualify as a predicate under the career offender enhancement. To the contrary, while Stegemann's conviction was on direct appeal, the First Circuit expressly held that this statute was "unarguably a conviction for a controlled substance offense and, thus, a proper predicate offense under the career offender guideline." *United States v. Montoya*, 844 F.3d 63, 72 (1st Cir. 2016). On that basis alone, counsel's decision to forego such a legal argument cannot be said to fall below prevailing professional norms. Nor can it be argued that Stegemann was prejudiced by that decision, since it is not reasonably probable that the district court would have credited the argument and reached a

> conclusion at odds with the First Circuit's subsequent holding on the same issue.

*Stegemann v. United States*, No. 20-3772, 2022 WL 17072983, at *3 (2d Cir. Nov. 18, 2022) (citation omitted). Stegemann moved for reconsideration and for rehearing *en banc*, which this court denied. Shortly before filing the motion for reconsideration and for rehearing, Stegemann also filed a "Motion for Resentencing under 28 U.S.C. § 2255" in the district court, again reiterating the claim that his 1999 Massachusetts conviction did not qualify as a controlled substance offense because of the "bringing in" theory. The district court treated this filing as a motion for leave to amend Stegemann's § 2255 petition yet again and denied the motion—as well as a certificate of appealability—because "the gist of the argument raised in the filing … was previously raised and rejected by this court and the Second Circuit on appeal." App'x 31. We granted a motion for a certificate of appealability to challenge the denial of leave to amend. This appeal followed.

## STANDARD OF REVIEW

We review the denial of a motion for leave to amend for abuse of discretion. *See Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001). If the denial of leave to amend was based on a legal interpretation, however, we consider the legal question *de novo*. *Id.* Federal Rule of Civil Procedure 15(a) provides the standard for addressing a motion for leave to amend a habeas petition. *See id.* at 363. Under Rule 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]lthough Rule 15 requires that leave to amend be 'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."

*Littlejohn*, 271 F.3d at 363. Moreover, "a district court may properly deny leave when amendment would be futile." *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999).

## DISCUSSION

In Stegemann's prior appeal, this court considered and rejected the argument that his sentencing counsel was ineffective for not challenging the use of his 1999 Massachusetts conviction as a predicate for designating him a career offender. The district court was bound to follow that decision by the mandate rule, an aspect of the law-of-the-case doctrine "that 'rigidly binds the district court,' barring it from considering issues 'explicitly or implicitly decided on appeal,'" *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024) (quoting *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006)), and even from considering "issues that were ripe for review at the time of an initial appeal but nonetheless foregone by a party," *id.* (internal quotation marks and alteration omitted). For that reason, the district court was correct to recognize that the proposed amendment—which repeated the argument our court had already considered—was futile.

To be sure, "the law-of-the-case doctrine does not bind this court with the same rigidity that the mandate rule binds the district court," but "we have consistently recognized it to reflect a sound policy that we should depart from sparingly and only when presented with cogent and compelling reasons." *Id.* (internal quotation marks and citation omitted). The "major grounds" justifying such a departure are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). Stegemann argues that these grounds are

present here because (1) the prior panel erred by relying on *Montoya*, considering the purported ambiguity of the statute of conviction in that case, (2) the subsequent decision in *United States v. Bain*, No. 14-CR-10115, 2022 WL 4494036 (D. Mass. Jan. 14, 2022), provides new support for the "bringing in" theory, and (3) the use of his 1999 Massachusetts conviction as a career offender predicate represents a clear error that produced a manifest injustice. We consider each argument in turn.

**I**

First, Stegemann argues that the First Circuit misidentified the statute of conviction in *Montoya* and therefore the prior panel erred in relying on that decision for the proposition that § 32E qualifies as a controlled substance offense under the guidelines. In support of his argument, Stegemann produces a letter from the Massachusetts Supreme Judicial Court identifying § 32A(d) as the statute under which Montoya was convicted.

We are not persuaded. The *Montoya* opinion expressly identifies and discusses § 32E, *see Montoya*, 844 F.3d at 72 ("First, the defendant has a prior state conviction for cocaine distribution. *See* Mass. Gen. Laws ch. 94C, § 32E."), and the prior panel cited *Montoya* only for the proposition that such case law existed shortly after Stegemann's sentencing. The prior panel was not bound by *Montoya* and did not purport to be so bound. Rather, in assessing Stegemann's argument that his counsel was ineffective, the prior panel evaluated whether the failure to advance an argument based on the "bringing in" theory "fell below an objective standard of reasonableness under 'prevailing professional norms'" and could have affected the outcome of the proceeding. *Stegemann*, 2022 WL 17072983, at *1 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

7

That analysis depended on the legal landscape at the time of the sentencing. The prior panel noted that Stegemann "cites to no authority to support his claim that, at the time of his sentencing, his 1999 conviction under … § 32E(b) did not qualify as a predicate under the career offender enhancement." *Id.* at *3. It remains true that, at the time of his sentencing, no authority supported the proposition that a conviction under § 32E(b) did not qualify as a career offender predicate—whether or not *Montoya* eventually pointed in the other direction—and no change in controlling law has called into question the conclusions of the prior panel that "counsel's decision to forego such a legal argument cannot be said to fall below prevailing professional norms" and that "it is not reasonably probable that the district court would have credited the argument." *Id.*

## II

Second, Stegemann suggests that the district court opinion in *Bain* justifies a departure from the law of the case. In *Bain*, the U.S. District Court for the District of Massachusetts concluded that a defendant's counsel engaged in deficient performance by failing to argue that § 32E(b) did not qualify as a "serious drug offense" under the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e) (defining "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance"). The district court further held that if the counsel "had objected to the use of the trafficking statute as an ACCA predicate at trial, there is a reasonable probability the court would have found that 'bringing into the commonwealth' was not a serious drug crime" because "[b]ringing into the commonwealth lacks a connection to manufacturing or distributing, or possessing with the intent to do either." *Bain*, 2022 WL 4494036, at *5.

8

"[T]he standard for showing a change in law sufficient to avoid the mandate rule or law-of-the-case doctrine" demands "that more than 'mere doubt' is necessary to reconsider prior decisions." *Aquart*, 92 F.4th at 92 (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)). Instead, "[t]he law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel*, 668 F.2d at 109 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).

The district court in *Bain* concluded that "bringing in" under § 32E(b) could not qualify as a "serious drug offense" as the ACCA defines that term because the act of bringing a drug into the state does not involve "manufacturing, distributing, or possessing with intent to manufacture or distribute" the drug. 18 U.S.C. § 924(e). The sentencing guidelines, however, do not define "controlled substance offense" by reference to the same activities. Under the guidelines, a "controlled substance offense" is an offense "under federal or state law … that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance." U.S.S.G. § 4B1.2(b)(1). *Bain* does not answer the question of whether "bringing in" a drug violates a law that prohibits its "import." That is because such a law qualifies as a "controlled substance offense" under the guidelines but not as a "serious drug offense" under the ACCA. Given that distinction, *Bain* cannot create "a clear conviction of error" with respect to the legal conclusion on which the prior panel relied. *Fogel*, 668 F.2d at 109 (quoting *Zdanok*, 327 F.2d at 953).

Moreover, it is undisputed that *Bain* was (1) decided *after* Stegemann's sentence was final (2) by a district court in another circuit. For those reasons, it represents neither an intervening change in controlling law nor new evidence that would justify a departure

from the decision of the prior panel regarding the legal landscape at the time of sentencing.

### III

Third, Stegemann argues that the prior panel's rejection of the "bringing in" theory reflects a clear error such that reconsideration is necessary to avoid a manifest injustice. We again disagree.

The sentencing guidelines define "controlled substance offense" to include the violation of a "state or federal law" that prohibits the "import" of a controlled substance. U.S.S.G. § 4B1.2(b)(1). The word "import" means "to bring from a foreign or external source." *Import*, Merriam-Webster's Third New International Dictionary 1135 (1981). The plain meaning of "import" therefore includes "bringing in" a controlled substance from out of state—which means that a conviction under § 32E(b) qualifies as a controlled substance offense under the guidelines.

Stegemann invokes the *Jerome* presumption, according to which "we must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Jerome v. United States*, 318 U.S. 101, 104 (1943). He observes that we have applied the *Jerome* presumption to the term "controlled substance" in order to conclude that it "must refer exclusively to those drugs listed under federal law" because otherwise the guidelines enhancement would turn on a state decision to control a substance that federal law leaves uncontrolled. *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018). In Stegemann's view, the term "import" must also refer exclusively to the concept of importation under federal law—which would mean that it refers only to importation from abroad. *See*

10

21 U.S.C. § 952(a) (prohibiting the importation of a controlled substance "into the United States from any place outside thereof").

We do not agree that the term "import" in § 4B1.2 must be so limited. In *Townsend*, we identified an "ambiguity in defining 'controlled substance'" because that term of art must refer to those drugs proscribed by a particular body of law. *Townsend*, 897 F.3d at 70. We see no similar ambiguity in the words describing the *conduct* of an offender—that is, "the manufacture, import, export, distribution, or dispensing" of the drugs. U.S.S.G. § 4B1.2(b)(1). Accordingly, there is no obstacle to applying the normal principle that an undefined term receives its ordinary meaning. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").[1] The "import" of a drug may be prohibited under federal or state law, and the term naturally refers to bringing the controlled substance into the relevant jurisdiction. There is no indication that the Sentencing Commission referred only to importation from abroad; to the contrary, the Commission referred to a "federal *or* state law" that "prohibits" the "import" of a controlled substance. U.S.S.G.

---

[1]  *See also Smith v. United States*, 508 U.S. 223, 242 (1993) (Scalia, J., dissenting) ("In the search for statutory meaning, we give nontechnical words and phrases their ordinary meaning."); *Chapman v. United States*, 500 U.S. 453, 461-62 (1991) ("Neither the statute nor the Sentencing Guidelines define the terms 'mixture' and 'substance,' nor do they have any established common-law meaning. Those terms, therefore, must be given their ordinary meaning."); *Moskal v. United States*, 498 U.S. 103, 108 (1990) ("In determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning.") (internal quotation marks and citation omitted); *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

§ 4B1.2(b)(1) (emphasis added). And there is no danger—as there was in *Townsend*—that giving the term "import" its ordinary meaning would allow the enhancement to turn on a state's decision to proscribe conduct that bears no resemblance to the federally proscribed conduct. Unlike "controlled substance," the term "import" has an ordinary meaning independent of a particular body of law.[2]

In our view, therefore, the definition of "controlled substance offense" under § 4B1.2 includes a state law offense such as that under § 32E(b) prohibiting the "bringing in" of drugs from out of state. For that reason, we see no clear error in the prior panel's decision and no manifest injustice that warrants its reconsideration.

## CONCLUSION

Because Stegemann identifies no circumstances that warrant a departure from the law of the case, it would have been futile to amend the petition to reassert the same "bringing in" theory that was

---

[2] We recognize that in *United States v. Martinez*, the Ninth Circuit decided that the term "import" in § 4B1.2(b) "must necessarily mean importing across an international border." 232 F.3d 728, 732 (9th Cir. 2000). It did so after observing that "a federal sentencing enhancement provision such as the career criminal guideline here at issue is interpreted according to a uniform, national definition, not dependent upon the vagaries of state law." *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 591-92 (1990)). In *Taylor*, the Supreme Court said that an enhancement should turn on "the generally accepted contemporary meaning of a term" in the federal statute rather than "depend upon the label employed by the State of conviction." *Taylor*, 495 U.S. at 596, 589; *see id.* at 603 (Scalia, J., concurring in part and concurring in the judgment) ("The Court says, correctly, that the statutory term 'burglary' has a 'generally accepted contemporary meaning' which must be given effect."). Here, we conclude that the guidelines term "import" has an accepted ordinary meaning that does not depend on vagaries of state law. Accordingly, we diverge from the Ninth Circuit's approach.

12

considered and rejected in the prior appeal. The district court did not abuse its discretion by denying leave to amend. We affirm the judgment of the district court.