**E-FILED**
**CNMI SUPREME COURT**
E-filed: Aug 22 2025 05:04PM
Clerk Review: Aug 22 2025 05:04PM
Filing ID: 76913182
Case No.: 2024-SCC-0018-CRM
NoraV  Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Plaintiff-Appellant,*

*v.*

**RALPH ANTHONY DLG. TORRES,**
*Defendant-Appellee.*

**Supreme Court No. 2024-SCC-0018-CRM**

---

**SLIP OPINION**

**Cite as: 2025 MP 6**

Decided August 22, 2025

————————

ASSOCIATE JUSTICE JOHN A. MANGLOÑA
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE SABRINA S. MCKENNA

————————

Superior Court Criminal Action No. 23-0127-CR
Judge Pro Tempore Arthur R. Barcinas, Presiding

————————

MANGLOÑA, J.:

¶ 1     Appellant Commonwealth of the Northern Mariana asks this Court to determine that the Office of the Attorney General ("OAG") cannot be disqualified from prosecuting Appellee Ralph DLG. Torres ("Torres") because the trial court improperly reconsidered a prior determination and denied the Commonwealth due process. We find that the trial court was correct to disqualify Kingman; however, the disqualification of the entire OAG was improper. Accordingly, we AFFIRM in part and REVERSE in part.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2     This opinion accompanies *Commonwealth v. Torres* ("*Torres I*"), 2025 MP 5, also involving the disqualification of the OAG from the prosecution of Torres. The factual and procedural history of both appeals are largely shared; this opinion makes reference to the appendices included in both appellate records to provide a more comprehensive review of all relevant history.

¶ 3     In 2020, the Office of the Governor, under the direction of then-Governor Torres, submitted a Legal Services Request ("LSR") to the OAG for guidance on whether the governor must comply with a legislative subpoena. Attorney General Edward Manibusan ("Manibusan") assisted and issued a written opinion on the matter.  The opinion concluded by stating

> As you are aware, my office has been charged with the responsibility of enforcing the subpoena by bringing criminal action against those who do not comply with a legislative subpoena. Because of this responsibility and the obvious conflict and other ethical concerns, my office can provide general advice to you and your staff on providing information to the legislature but will not represent the executive branch to quash a legislative subpoena.
> Appendix to *Torres I* at 512.

¶ 4     In December 2021, Torres was subpoenaed by a committee of the Commonwealth Legislature.  Torres did not comply with the subpoena and did not appear at the hearing. The OAG, through Chief Solicitor J. Robert Glass, Jr. ("Glass"), filed fourteen criminal charges against Torres in April 2022. The first thirteen counts allege that Torres illegally issued numerous first-class airline tickets for himself and his wife throughout 2018, in violation of 1 CMC § 7407(f) and 6 CMC § 1601(a). The fourteenth count alleges contempt for Torres' failure to appear for the legislative subpoena.

¶ 5     After the criminal case was assigned to Judge Pro Tempore Alberto E. Tolentino ("Initial Judge"), Torres moved to disqualify the OAG as prosecutor. Torres argued that the OAG is conflicted generally from prosecuting the governor because of its dual duty to provide the governor legal advice and prosecute alleged violations of Commonwealth law. Torres further argued that the OAG was specifically conflicted from this prosecution because it assisted in forming a draft government travel policy that would have allowed the Governor to travel first-class, Manibusan himself had flown first-class, and the OAG gave legal

advice on travel regulations for 1 CMC § 7407(f)—the law Torres has been charged with violating, all in violation of Model Rule of Professional Conduct 1.7. Appendix at 29–33.

¶ 6    In response to the motion, both Manibusan and Glass provided declarations. Glass stated that he was assigned to oversee the investigation into possible criminal prosecutions against the Governor under screening procedures. He was removed from all civil litigation cases and reassigned to the criminal division. Files for the Torres prosecution were stored separately, digitally in a password-protected folder on a separate cloud drive and physically in a locked filing cabinet with a folder marked with the list of people allowed to access it. All OAG staff not assisting in the prosecution were notified that they were screened from the case. Appendix at 51–54.

¶ 7    Manibusan stated that he provided early guidance in drafting travel regulations for the Commonwealth government throughout 2016 to 2018, but that the OAG did not participate in drafting regulations beyond that. Manibusan also stated that he completed a LSR to review the draft regulations in 2020, ensuring their compliance with 1 CMC § 7407(f). Appendix to *Torres I* at 55–56.

¶ 8    Manibusan also testified at an evidentiary hearing in May–June 2022. He stated that he was screened off from the investigation after assembling the prosecuting team. He conceded, however, that this may not have been done consistent with the OAG's policies and procedures for screening. Appendix at 89–92.

¶ 9    Office of the Governor's legal counsel Gilbert Birnbirch testified that he had included Glass in emails regarding the legislative subpoena LSR, giving him access to privileged information regarding Torres and his defense. *Id.* at 276.

¶ 10    Based on the evidence presented, the Initial Judge granted Torres's motion to disqualify in part. The court first found that the only "applicable restraints on the OAG's duty to prosecute violations of Commonwealth law are the conflicts of interests identified in the Model Rules," then found that Model Rule 1.7 did not apply because Torres is not a client. Appendix at 368, 371. The court also found that Glass was disqualified from prosecuting the contempt charge due to his access to privileged information through the LSR. The court dismissed the contempt charge without prejudice and instructed the OAG to appoint a new, untainted prosecutor.

¶ 11    The OAG then entered into a contract with James Kingman ("Kingman") in February 2023 to serve as special prosecutor in Criminal Case No. 22-0050 and to perform other duties on behalf of the Commonwealth. Kingman included in the contract that he would "report to and take direction from you, Edward Manibusan." *Id.* at 598. He was admitted pro hac vice in March 2023 to prosecute the remaining 13 charges. Glass was appointed as local counsel, attesting that he would associate with Kingman. Kingman was also later granted temporary admission as an Assistant Attorney General. *In re Application for Pro Hac Vice Admission of James Robert Kingman*, No. 2023-SCC-0005-PHV (NMI Sup. Ct.

Mar. 6, 2023) (Order Admitting Applicant Pro Hac Vice and Waiving Fees); *In re Application for Provisional Admission of James Robert Kingman*, No. 2023-BAR-0006-GOV (NMI Sup. Ct. Jul. 13, 2023) (Order Granting Provisional Admission).

¶ 12     In October 2023, Kingman filed an information charging Torres with two separate counts at issue in this appeal. The information included the refiled contempt charge and one count of misconduct in public office, both related to Torres's failure to appear in response to the legislative subpoena. Appendix at 595.

¶ 13     Throughout 2023 and 2024, Torres made several motions and attempts to remove or disqualify Kingman from both prosecutions, including a motion to reconsider the initial order in *Torres I.* The court held a hearing on that motion in December 2023, where the Commonwealth asserted that the screening procedures for Kingman are sufficient to prevent any improper influence or conflict. Appendix to *Torres I* at 671. With respect to the charges in this case, Torres also moved to disqualify both Kingman and the entire OAG.

¶ 14     The court issued orders in July 2024 granting disqualification in both cases. *Appendix* at 528, 544. In this case, the court found that "Kingman's integrity was compromised through his association with AAG Glass" because Glass was appointed to serve as Kingman's local counsel and Kingman was also tainted by his employment contract requiring him to report and take orders from Manibusan. *Id.* at 536, 541. It also found that the entire OAG was disqualified because it—under the direction of AG Manibusan—represented Torres as Governor for the LSR before it "switched" to represent the Commonwealth against Torres in this case. *Id.* at 541. Because all attorneys in the OAG report to Manibusan, who was tainted by completing the LSR, the court determined all attorneys must be vicariously disqualified for presumed exposure to confidential information. Finally, the court declined to appoint a special prosecutor itself, because no evidentiary hearing was held on the disqualification of the current prosecutors, and instead directed "the executive branch to take up the prosecutorial mantle if it so chooses." *Id.* at 544. The Commonwealth timely appeals.

## II. JURISDICTION

¶ 15     The Constitution grants this Court jurisdiction over final orders and judgments of the Superior Court. NMI Const. art. IV, § 3. However, we may also hear appeals of interlocutory orders under the collateral order doctrine, if the order conclusively determines a disputed question, resolves an important issue separate from the merits, and would be effectively unreviewable on appeal from a final judgment. *Reyes v. Commonwealth*, 2024 MP 8 ¶ 5.

¶ 16     We determine in *Torres I* that the disqualification of the entire OAG satisfies the collateral order doctrine because the potential harm to separation of powers warrants immediate appellate review. 2025 MP 5 ¶ 13. As in *Torres I*, we hold that the Commonwealth may be the appellant of such orders under the

collateral order doctrine without needing to satisfy any provisions of 6 CMC § 8101. *Id.* ¶ 19. By finding that we have jurisdiction to hear this appeal, we need not address the petition for a writ of mandamus and now address the merits.

### III. STANDARD OF REVIEW

¶ 17    Disqualification of the entire prosecutorial office is reviewed for abuse of discretion. *Torres I*, 2025 MP 5 ¶ 22; *United States v. Williams*, 68 F.4th 564, 571 (9th Cir. 2023).

### IV. DISCUSSION

*A. Disqualification of Kingman and vicarious disqualification of the Office of the Attorney General*

¶ 18    The trial court declared that the entire OAG was disqualified from this case based on the principle of vicarious disqualification, in which one attorney's conflict of interest may be imputed to their entire firm. Appendix at 535 (citing *In re Feliciano*, 1999 MP 3 ¶¶ 44–51). The court imputed a conflict of interest from Manibusan and Glass to the entire OAG, generally as a law firm, and specifically to Kingman, based on his pro hac vice admission and employment contract. Appendix at 544.

¶ 19    It is true that ABA Model Rule of Professional Conduct 1.10 imputes a conflict of one attorney onto their entire firm. ABA MODEL RULES OF PROF'L CONDUCT R. 1.10(a) (hereinafter "MRPC"). However, we have held that this imputation does not make practical sense when applied to the OAG. *Torres I*, 2025 MP 5 ¶ 51. Disqualification of a prosecutor must instead be considered on a case-by-case basis.

¶ 20    Both Glass and Manibusan have been exposed to privileged information that disqualify them from prosecuting this case. Manibusan admitted in 2022 that he was screened from the case because of his participation in the LSR. Appendix at 89–91. Testimony at the same evidentiary hearing also revealed that Glass was also exposed to Torres's privileged information in the LSR. *Id.* at 276. Furthermore, Glass has also conceded that he is disqualified from the contempt charge.

¶ 21    Because attorneys from the OAG have a conflict of interest with this prosecution, Kingman and other attorneys in the office could be vicariously disqualified based on the lack of a screen. *See Torres I*, 2025 MP 5 ¶ 57. Whether the trial court erred in imputing the conflict, from either Manibusan or Glass, to Kingman and the OAG depends on the facts surrounding each attorney and the conflict involved in the case. *See In re Request of Lourdes A. Leon Guerrero*, 2024 Guam 18 ¶ 61.

¶ 22    Here, Kingman must be disqualified due to his professional association with Glass. Supreme Court Rules require that the pro hac vice attorney "associate with" a local attorney. NMI SUP. CT. R. 73-1(e). When Kingman was admitted pro hac vice for the prosecution of Torres for misconduct in public office and theft, he designated Glass as his local counsel. Appendix to *Torres I* at 683. Glass,

as local counsel, was also required to attest that he would comply with this requirement. *Id.*

¶ 23      In this regard, this Court has described the duties and responsibilities of local counsel. *Sonoda v. Villagomez* informs that local counsel must receive and relay all communications and documents to off-island counsel for opposing counsel or the court and vice versa, appear in court upon short notice, facilitate court proceedings to prevent delays or miscommunications, and appear in regularly scheduled hearings when off-island counsel cannot. 3 NMI 535, 543–44 (1993). The MRPC also require local counsel to "actively participate in and share responsibility for the representation of the client." MRPC R. 5.5 cmt. 8; *see In re York*, 2010 MP 11 ¶ 7 (applying the MRPC regarding pro hac vice admission to attorneys in the Commonwealth).

¶ 24      Applying these principles, we conclude that Glass and Kingman cannot fully "associate" to prosecute Torres without creating an appearance of impropriety. Criminal trials must "appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). In high profile prosecutions, such as this case, maintaining public trust is paramount. The concurrent prosecutions of Torres here and in *Torres I* are linked by a common history and the same attorneys. The two charges brought in this case ultimately trace back to the same actions, investigations, and allegations as the remaining thirteen charges in *Torres I*.

¶ 25      While Glass and Kingman could have associated on the theft and misconduct charges without discussing the contempt charge or the privileged information to which Glass was exposed, this does not negate its improper appearance. It is clear from the appellate record that these two cases remain intertwined; much of the appendix for this appeal are documents and transcripts from the *Torres I* proceedings—before and after bifurcation in 2022. For Glass to complete his duties as local counsel in *Torres I* while Kingman was admitted pro hac vice, it would be improbable the OAG could complete its standard screening procedures for tainted attorneys. Glass could not simultaneously be screened from the case, without access to the case file, and be able to competently represent the Commonwealth in court proceedings as necessary. *See* Appendix at 38; *Sonoda*, 3 NMI at 543. The trial court therefore did not abuse its discretion by disqualifying Kingman on the basis of his association with Glass.[1] Although no direct misconduct may be proven, the risk of perceived bias is sufficient to warrant disqualification. *See Clinard v. Blackwood*, 46 S.W.3d 177, 186 (Tenn. 2001) (recognizing the appearance of impartiality as an independent basis for disqualification of an attorney); *see also State v. Orrick*, 592 S.W.3d 877, 884 (Tenn. Crim. App. 2018) (recognizing that "the principles of the [appearance of

---

[1]      When previously faced with a prosecuting attorney who is conflicted for less than all counts alleged, this Court has also disqualified the attorney from the entire matter because "split representation would increase costs without achieving a corresponding benefit." *In re Woodruff*, 2014 MP 09 ¶ 20.

impropriety] standard are contained in Rule 1.10(d)"). There is a compelling interest in preserving institutional integrity, which includes avoiding even the suggestion of partiality.

¶ 26 Kingman was also properly disqualified from this prosecution because of his initial employment contract with the OAG. In the document, Kingman wrote that he was to "report to and take direction from" Manibusan as a special prosecutor for the *Torres I* case and other potential cases as directed. Appendix at 597–98. Such a relationship between a conflicted attorney and a non-conflicted attorney is improper and inconsistent with screening procedures necessary to maintain ethical propriety. So, the court did not err in determining Kingman vicariously disqualified through his professional relationship with Manibusan. Public confidence in the prosecutorial process demands that a conflicted attorney, or those closely associated with him, be removed from the case entirely.

¶ 27 "[T]o maximize faith in the judicial process, prosecuting attorneys must be disinterested from the start of the appointment through the close of the representation." *In re Woodruff*, 2014 MP 09 ¶ 12. Kingman's transition from special prosecutor admitted pro hac vice to assistant attorney general under a temporary bar admission does not cure the initial impropriety of his associations with conflicted attorneys. Nor can his disqualification be cured by the later refiling of these charges. Attorney disqualification for a conflict of interest is generally not curable by a renewed prosecution under the control of the disqualified attorney. *See, e.g., Commonwealth v. Price*, 684 A.2d 640 (Pa. Super. Ct. 1996).

¶ 28 The disqualification of an attorney cannot be undone. Future judges may not reverse, strike, or otherwise undo an attorney disqualification, except when ruling on a timely motion for reconsideration. To otherwise permit a disqualified attorney to rejoin a case is contradictory to the "law of the case" principles that courts follow. *Arizona v. California*, 460 U.S. 605, 618 (1983); *Stegemann v. United States*, 132 F.4th 206, 211 (2d Cir. 2025) (clarifying that motions for reconsideration may circumvent the requirement to follow the law of the case); *Commonwealth v. Taitano*, 2017 MP 19 ¶ 20 (recognizing law of the case in the Commonwealth). Kingman and Glass, no matter their positions or contracts, may not return to prosecute these charges against Torres.

¶ 29 As we explain in *Torres I*, however, there is an insufficient factual record to support the disqualification of the entire OAG. We will not mechanically apply MRPC 1.10 to the OAG, and instead allow attorneys tainted by conflicts of interest to be screened off from matters. *Torres I*, 2025 MP 5 ¶ 56. No new evidence or information indicates that screening procedures for attorneys beyond Kingman have failed. Attorney General Manibusan's 2022 testimony, combined with the details from the OAG's Policies and Procedures Manual, are sufficient to prevent imputation of conflicts in *Torres I*; we find no specific reason to

deviate from that finding for this case. *Id.* ¶ 57. The entire OAG should not have been vicariously disqualified from prosecuting Torres[2].

### B. Attorney disqualification without an evidentiary hearing

¶ 30    The Commonwealth argues that the trial court improperly relied only upon the arguments of counsel regarding screening procedures before disqualifying Kingman. Notice and a hearing are generally required to disqualify attorneys. *In re San Nicolas*, 2013 MP 8 ¶ 20. Due process, however, is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

¶ 31    Notice and an opportunity to be heard were provided to the Commonwealth in 2022 when the Initial Judge first considered disqualifying the OAG: Kingman's employer and, by constitutional decree, the Commonwealth's counsel. *See* Appendix at 55. That Kingman was not part of the OAG at the time is inconsequential under the circumstances.

¶ 32    Under our review for an abuse of discretion, the trial court committed no error if a "rational and substantial legal argument can be made in support" of the decision. *In re San Nicolas*, 2013 MP 08 ¶ 9; *In re Abraczinskas*, 2023 MP 12 ¶ 10. Because "our analyses for abuse of discretion and clear error are one and the same," we rely on the same standard applied in the *San Nicolas* writ of mandamus to guide our analysis of this appeal. *Abraczinskas*, 2023 MP 12 ¶ 10.

¶ 33    Kingman's disqualifying associations with Glass and Manibusan were both properly considered by the trial court. His pro hac vice admission, as a filing in this Court, is a matter of public record. *See In re Estate of Mangloña*, 2023 MP 13 ¶ 78 (quoting *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)). That admission order and Kingman's employment contract are also included in the appellate record as filings in the trial court. NMI Sup. Ct. R. 10(a) (including the "original papers and exhibits filed in the Superior Court" as constituting the record on appeal).

¶ 34    The evidence in the record shows that Kingman must be disqualified from prosecuting this case, even without an evidentiary hearing. Combined with the Commonwealth's prior notice and opportunity to be heard, the lower court's

---

[2] Even if disqualification of the entire office was warranted, the court erred in directing the executive branch to continue the prosecution itself, without the Attorney General. Appendix at 544. To err on the side of caution regarding the court's supervisory power and separation of powers between the three branches is still error. *See United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir., 1985) (noting that judicial integrity may be threatened by executive actions that violate the law). Deference to the executive branch regarding appointment of a special prosecutor is not contemplated by the NMI Constitution and the ability to appoint one is well within the supervisory power of the court. *Commonwealth v. Oden*, 3 NMI 186 (1992).

decision did not deny the Commonwealth due process before disqualifying its attorney. We affirm the disqualification.

## V. CONCLUSION

¶ 35    For these reasons, we hold that the trial court erred in vicariously disqualifying the entire Office of the Attorney General from this prosecution. We uphold the disqualifications of the attorneys of record based on the appearance of impropriety and likelihood of exposure to privileged information among these attorneys. The Commonwealth was not denied due process because of the previous evidentiary hearing and its later failure to employ proper screening measures. We REVERSE the disqualification of the entire OAG and AFFIRM the disqualification of Kingman.


SO ORDERED this 22nd day of August, 2025.



/s/
JOHN A. MANGLOÑA
Associate Justice


/s/
ROBERT J. TORRES, JR.
Justice Pro Tempore


/s/
SABRINA S. MCKENNA
Justice Pro Tempore


COUNSEL

James R. Kingman, Saipan, MP, for Plaintiff-Appellant.

Joaquin DLG. Torres, Anthony H. Aguon, Victorino DLG. Torres, and Viola Alepuyo, Saipan, MP, for Defendant-Appellee.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e-mail Supreme.Court@NMIJudiciary.gov.